UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/11/2016
```

------------------------------------------------------------------X
                               :

ELIO CRUZ,                          :

                   Petitioner,        :        13-CV-2414 (JMF)

                               :

      -v-                      :        OPINION AND ORDER

                               :

SUPERINTENDANT,              :

                   Respondent.     :

                               :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Petitioner Elio Cruz was convicted in New York state court of murder in the second degree and sentenced principally to an indeterminate term of eighteen years to life in prison. He now petitions, pursuant to Title 28, United States Code, Section 2254, for the writ of habeas corpus, contending that his trial lawyer provided ineffective assistance in violation of the Sixth Amendment. Cruz's principal claim is that, given the overwhelming evidence against him, counsel should have pursued an extreme emotional disturbance ("EED") defense or requested a lesser-included-offense instruction on manslaughter in the first degree. The state courts rejected that claim, finding that the record reflected that trial counsel pursued a go-for-broke strategy at the behest of Cruz himself — who vehemently denied his guilt and testified to that effect at trial. For the reasons stated below, the Court is compelled to conclude that the state courts' determinations were not unreasonable or contrary to any Supreme Court precedent. Accordingly, and for the reasons stated below, Cruz's petition is DENIED.

## BACKGROUND

The following facts are taken from the state court record.  On February 19, 2005, Cruz's wife of fourteen years, Belkys Pena, and a man with whom she was having an affair, German Cabrera, traveled together by subway from Upper Manhattan to Chelsea.  (Trial Tr., *People v. Cruz*, Ind. No. 906-05 ("Trial Tr.") 354, 368-70, 390, 400).  As Pena and Cabrera walked towards the subway exit, a man wearing a dark jacket with light sleeves and a cap stepped out from behind a pillar and shot Cabrera, killing him.  (*Id.* at 370-79, 523-25).  Cruz was later arrested and indicted on a single count of murder in the second degree for the killing.

### A.  The Trial

#### 1.  The Evidence

At trial, the prosecution presented overwhelming evidence — including eyewitness testimony and time-stamped videos — placing Cruz at the scene of the crime.  (*See* Trial Tr. at 79-92, 116-43, 356, 384-87, 457-58).  For example, security cameras recorded Cruz outside the subway station within minutes of the crime wearing a blue jacket with beige sleeves — similar to the one that Pena and eye witnesses described the killer as wearing — and discarding an object near where police later recovered a spent shell casing.  (*See id.* at 160, 239-41, 577-79).  The prosecution also presented substantial evidence that Cruz had known, since at least December 2004, that his wife was having an affair with Cabrera.  (*See id.* at 360-61).  Among other things, the police recovered from Cabrera's body three miniature cassette tapes with recordings of telephone calls in which Cruz confronted Cabrera about the affair.  (*See id.* at 203-10).  In the recordings, Cabrera did not admit to being intimate with Pena, but repeatedly taunted Cruz, who responded with increasingly escalating threats.  (*See* Mem. Law Supp. Answer Opposing Pet.

Writ Habeas Corpus (Docket No. 14) ("Resp't Mem.") 23-31 (citing People's Ex. 114, at 10-11, 15, 26)).

Cruz was represented at trial by Carolos Perez-Olivo.  He called three witnesses in Cruz's defense: Cruz's pastor and brother-in-law as character witnesses and, most notably, Cruz himself.  (*See* Trial Tr. 544, 550, 558).  During his own testimony, Cruz denied shooting Cabrera and attempted to explain away the evidence appearing to tie him to the crime.  (*See id.* at 592).  He admitted to making the statements on the cassette tapes, but insisted that his threats were bluffs and bluster.  (*Id.* at 561-66).  And although he acknowledged that he was near the subway station at the time of the shooting (to meet his wife) and that he was the man on the surveillance tapes wearing the blue and beige jacket, he claimed he had not been involved in the murder and that the object he was seen discarding on the video was a peanut shell that had been in his pocket.  (*Id.* at 566-80).  Cruz testified that he no longer had the jacket because he had donated it to charity on the day of the murder.  (*Id.* at 580-81).  As part of the defense's case, counsel also introduced into evidence, without explanation, a "Sprint" report reflecting 9-1-1 calls relating to the shooting and the times at which they were made.  (*Id*. at 542).

## 2.  The Charge Conference and Summations

At the close of the evidence, the judge — Justice Carol Berkman of New York Supreme Court — noted that the prosecutor had previously indicated that he was "contemplating . . . asking" for an instruction on the lesser-included offense of manslaughter in the first degree and that, in her view, such a charge "might be . . . appropriate."  (*Id.* at 630).  In response, however, the prosecutor indicated that he was not requesting any lesser-included offense instruction.  (*Id.*).  More significantly, Perez-Olivo, Cruz's counsel, stated that he was not requesting any lesser-

included charge instruction either, and expressly consented to submitting only one count — murder in the second degree — to the jury.  (*Id.* at 630-31).

During his summation the next day, defense counsel acknowledged that, viewed with a "broad sweep," the evidence might suggest that Cruz was "the most likely person to have committed" the murder.  (*Id.* at 638).  Nevertheless, Perez-Olivo argued — albeit in a fashion that Respondent himself characterizes as "scattershot" (Resp't Mem. 48) — that the jury should find reasonable doubt.  Among other things, he emphasized that Cabrera was the one who had initiated contact in the recorded telephone calls and that the calls showed that Cruz was unsure about whether his wife "ha[d] been unfaithful or not."  (Trial Tr. at 641-42, 645).  Perez-Olivo also pointed to character evidence that Cruz was "not a violent man" and that Cabrera may have had other enemies, given some of his statements on the recorded calls.  (*See id.* at 647, 649). Additionally, counsel stressed that Pena herself had been unable to identify the shooter as her husband immediately after the shooting and that she had initially stated that the shooter appeared to be taller and bigger than Cruz — a description that was corroborated, counsel argued, by testimony from the medical examiner that the downward entry path of the bullet suggested that the shooter was taller than Cabrera (which Cruz was not).  (*See id.* at 652-54).  Finally, counsel argued that the time stamps on the videos demonstrated that it was physically impossible for Cruz to have committed the shooting.  (*Id.* at 673-81).  Specifically, citing the "Sprint" report, Perez-Olivo argued that the 9-1-1 call was made "somewhere around 8:51 [a.m.]," while the time stamped videos showed that Cruz was on the sidewalk at 8:50 and 8:52 a.m.  (*See id.* at 674, 678).  Perez-Olivo argued that it would have been impossible to commit the crime during such a small window of time.  Notably, however, he did not establish that the "Sprint" and surveillance video clocks were synchronized.

### 3.   The Jury's Deliberations and Verdict

The following evening, Juror Four wrote a letter to the judge stating that she was "appalled at the inept performance of the defense attorney" and that she "feared for anyone else he is hired to defend."  (*See* Resp't Mem. 54-55 (citing Ct. Ex. 11); *see also* Trial Tr. at 755-56). In response to Juror Four's letter, Justice Berkman observed that it was her "impression" that the defense had been guided by Cruz's decision — after consultation with counsel — to "go for broke.  To say, I'm not guilty as opposed to, I'm guilty but if I am it is of a lesser count."  (Trial Tr. 757).  Perez-Olivo then responded:

> That was a decision that was taken from almost the very beginning when I was retained and hired.  We discussed possibilities at one point.  We also discussed whether there would be any interest in a plea which would be obviously to manslaughter.  That has always been rejected by my client.
>
> My client's decision has always been he is not guilty of this and that he wants to be vindicated by a jury.  From the very first time I came into the case even though it was very early in the case I was answering ready for trial because he wanted to go to trial and he wanted to do it as soon as possible.
>
> I have explained to him if I requested for example an underlying manslaughter charge there was always the danger and possibility that the jury might compromise and decide to find him guilty of manslaughter which conveys penalties that are significant and can be actually not much different at the top level than what the murder count itself is.
>
> In any case, immaterial of what the penalties were it was again my client's decision that he is not guilty of anything.  That is why we're at trial.  That is the family's opinion also and that is based on — after consultation with him that we took the decision of going forward without a manslaughter charge or requesting one . . . .  That is our decision, Your Honor.

(*Id.* at 757-59).  Justice Berkman then asked Cruz if that "was correct," and Cruz said "[y]es." (*Id.* at 760).  Shortly thereafter, Perez-Olivo also stated that he had discussed with Cruz whether to seek a mistrial in light of Juror Four's letter, but that Cruz did not want a mistrial and wished to proceed to a verdict.  (*Id.* at 766-67).  After questioning each juror individually, the judge

ultimately dismissed Juror Four and a second juror because it was unclear whether they "could be fair and impartial." (*Id.* at 770-86). The jury later convicted Cruz of second-degree murder.

### 4. Sentencing

At sentencing on December 13, 2005, Perez-Olivo requested an adjournment to conduct an investigation to establish that the time stamps he referenced during his summation were in fact synchronized. (Sentencing Tr., *People v. Cruz*, Ind. No. 906-05, at 3-5). Justice Berkman denied the application as an untimely request for a "do-over." (*Id.* at 8-12). She then sentenced Cruz principally to a term of eighteen years to life in prison. (*Id.* at 23).

## B. Cruz's Motion To Vacate the Judgment

Shortly after Cruz's trial, Perez-Olivo was disbarred for an unrelated matter. *See In the Matter of Carlos Perez-Olivo*, 33 A.D.3d 141 (N.Y. App. Div. 2006). More significantly, in 2007, Perez-Olivo was arrested, and later convicted, in connection with the murder of his wife. *See Lawyer Convicted in Wife's Death*, N.Y. Times, Oct. 5, 2008, at A40, *available at* http://www.nytimes.com/2008/10/05/nyregion/westchester/05guilty.html?_r=0.

On June 16, 2008, represented by new counsel, Cruz filed a motion to set aside his conviction on the ground that Perez-Olivo had provided ineffective assistance of counsel. (*See* Am. Answer & App. Opp. Pet. Writ Habeas Corpus (Docket No. 22) ("Am. Answer & App."), Ex. D). Cruz asserted a number of errors: (1) that Perez-Olivo had failed to investigate, advise, and prepare for trial; (2) that Perez-Olivo should have requested a manslaughter charge or pursued an EED defense in light of overwhelming evidence that Cruz would be convicted of the murder; (3) that Perez-Olivo generally failed to challenge the prosecution's case (by not moving before trial to suppress Cruz's statement to the police and in various ways at trial); and (4) that Perez-Olivo should have sought a mistrial in response to Juror Four's letter. (*See id.*, Ex. D, at 7-

85).  In opposing the motion, the State filed an affidavit from Perez-Olivo in which he reiterated

what he had stated on the record — that his defense strategy had been guided by Cruz's

insistence on his innocence and Cruz's own decision to pursue a "go-for-broke" defense.  (Am.

Answer & App., Ex. B ("State Decision"), at 5; *see id.* Ex. I).

### 1.  The Hearing

Justice Berkman held an evidentiary hearing in connection with Cruz's motion, but

because Cruz had acknowledged on the record that it was his choice to forego any manslaughter

charge or EED defense in pursuit of complete vindication and his choice to proceed to a verdict

rather than seek a mistrial, she limited the hearing to whether Cruz had been misadvised prior to

making these decisions.  (State Decision at 2-3).  The hearing was held on October 2 and 3,

2008.  Cruz called as witnesses his sister, Tanya Humanyun, and his brother-in-law, Naseer

Humanyun, who testified that Perez-Olivo had repeatedly assured the family that the case was "a

piece of cake" and that they should trust him.  (*See* Am. Answer & App., Ex. E, Oct. 2, 2008, Tr.

25-27, 50, 60).  Cruz also called Julius Jesse Cohen, a lawyer hired by Cruz's family when he

had been questioned by the police.  (*Id.*, Oct. 3, 2008 Tr. 117).  A second hearing was held on

October 6, 2008, at which Cruz called Perez-Olivo's assistant counsel Robert Buckley.  (*See id.*,

Oct. 6, 2008, Tr. ("Buckley Hr'g Tr.").  Buckley testified that he had believed during trial (and

still believed at the time of the hearing) that Cruz had a viable defense based on "the timings" of

the surveillance images — that is, that the time stamps on the surveillance footage demonstrated

that Cruz could not have been at the location of the shooting when it took place.  (*Id.* at 29-30).

Buckley acknowledged that he and Perez-Olivo had never investigated whether the time stamps

on the surveillance videos and the "Sprint" logs were synchronized and explained that "[t]hat

was something [counsel] did not want to know."  (*Id.* at 103).  Regarding the availability of a

manslaughter charge, Buckley testified that, "[f]or the jury to be charged with a manslaughter charge, [Cruz] would have to admit that he did the shooting.  And Mr. Cruz maintained that he did not do the shooting."  (*Id.* at 52).  Perez-Olivo declined to speak with Cruz's appellate counsel and was not available to testify because of his own murder trial.  Cruz requested a continuance and sought compulsory process to call Perez-Olivo from jail.

### 2.  Justice Berkman's Decision

In a ten-page written opinion dated October 17, 2008, Justice Berkman denied Cruz's motion to vacate and his request for a continuance to permit Perez-Olivo to appear.  After briefly summarizing Cruz's arguments and the State's response, Justice Berkman noted that

> [t]he trial record (and associate counsel's testimony at the hearing) establishes that defendant acceded to counsel's approach, *indeed insisted upon it: that it was defendant's choice to 'go for broke,' his choice not to ask the jury to consider a lesser offense, his choice not to request a mistrial, his choice to demand a verdict of the jury already selected.*  This defendant is of course not the first to gamble on a jury acquittal and then regret the results.

(State Decision at 2 (emphasis added) (citing cases)).  In fact, Justice Berkman noted that, had Cruz "not alleged that he had been misadvised," he "would not" even "have received a hearing; without defendant's proving that he made his all or nothing choice because he personally was misadvised, defendant was not entitled to relief or even to a hearing."  (*Id.* at 2-3).

Reviewing the evidence at both the trial and the hearing, Justice Berkman concluded that Cruz had failed to show that he had been misadvised by counsel.  Justice Berkman noted that the testimony of Cruz's own witnesses at the hearing (namely, his "highly interested relatives" and Buckley) confirmed that Cruz had insisted on his complete innocence before and during trial.  (*Id.* at 4-5, 9).  And "there was no evidence" at the hearing, she found, that Cruz had "received incorrect or inadequate advice, and that led to his choosing to seek complete vindication in this case."  (*Id.* at 6).  Justice Berkman noted that Cruz did not testify at the hearing and that "many"

of the allegations he made in a self-serving affidavit that had led to "the granting of the hearing" were "unsupported if not contradicted by other evidence."  (*Id.* at 6).

Justice Berkman acknowledged that Buckley's testimony reflected some legal errors — "[f]or example, he said that he considered an [EED] defense not viable" because he thought that defense required Cruz to admit the homicide.  (*Id.* at 4 n.3).  But she ultimately concluded that those errors were harmless because there was no point in counsel "doing extensive legal research on a defense which [Cruz] had ruled out."  (*Id.*).  As for the request for an adjournment to call Perez-Olivo as a witness at the hearing, the Court noted that Cruz "never suggested that Perez-Olivo would testify that defendant had not been adequately advised on the possibility of a guilty plea or of lesser offenses" and that Perez-Olivo's uncontroverted affidavit said quite the opposite — "that his trial strategy was guided by defendant's continuing claim of innocence, that defendant insisted on testifying and that defendant refused any defense strategy which could result in conviction for a lesser crime, and similarly refused to consider a guilty plea, the possibility of which had been explained to defendant."  (*Id.* at 5).

In short, Justice Berkman found, on the basis of the trial record and the hearing, that

> [t]he defendant's insistence on his innocence, his refusal to consider a lesser offense whether by plea or by jury verdict, his insistence on a verdict when the court asked if there was a mistrial motion after two jurors were disqualified, all of which are amply evidenced by the record, provide a strategic and legitimate explanation . . . for [all of counsel's challenged] actions.

(*Id.* at 3).  In light of that, she concluded that the evidence "fails to establish ineffectiveness under either the federal or state standards, and the calling of Perez-Olivo and the examination of his motives for various specific trial decisions, could not change this conclusion."  (*Id.* at 8).  At the conclusion of her opinion, Justice Berkman noted that Cruz's strategy at the hearing — namely, his decision not to testify — left her

> with very little if anything besides what appears in the record of the trial, which reveals on its face a valid strategic reason for counsel's choices, that is, that defendant chose an all or nothing strategy. That strategy explains and justifies all of the complaints and quarrels the defendant now puts forward about trial counsel's representation. In fact, absent evidence that defendant chose this strategy because he was misadvised by counsel, it is inappropriate for this court to determine the issues presented by this petition, as they are matters of record. C.P.L. § 440.10(2)(b).

(State Decision at 10). The Appellate Division denied leave to appeal on January 8, 2009.

## C.  Cruz's Direct Appeal

Appellate counsel also filed a direct appeal raising the same issues that had been presented in the motion to vacate. On October 18, 2011 — after Justice Berkman's denial of Cruz's motion to vacate — the Appellate Division unanimously affirmed Cruz's conviction. *See People v. Cruz*, 88 A.D.3d 540 (N.Y. App. Div. 2011). The Appellate Division held that "[Cruz's] ineffective assistance claims primarily involve matters outside the record concerning counsel's strategic choices and defendant's input into those choices." *Id.* at 540. Because the Court was reviewing Cruz's claims on direct appeal, the court was limited to the trial record and did not review the record of the state habeas proceedings. *See id.* The Appellate Division concluded that "the trial record, including a detailed statement by counsel that defendant expressly ratified, shows that counsel had a legitimate explanation for declining to pursue any defense that would have led to a manslaughter conviction." *Id.* at 540-41. On January 19, 2012, the New York Court of Appeals denied Cruz's application for leave to appeal. *See People v. Cruz*, 18 N.Y.3d 882 (2012).

## APPLICABLE LAW

### A.  The AEDPA Standard of Review

The Court's authority to grant the writ of habeas corpus is limited by Title 28, United States Code, Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  Section 2254(d) provides that, "with respect to any claim that was adjudicated on the merits in State court proceedings," the writ cannot be granted unless (1) the state court's denial of the claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Significantly, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Further, "review is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

It is well established that a state court decision can be "contrary to" Supreme Court precedent in either of two ways: first, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or, second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court unreasonably applies clearly established precedent "if the state court identifies the correct governing legal rule" from the Supreme Court's cases "but unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.  Alternatively, "a state-court decision . . . involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 408; *see generally Richard S. v. Carpinello*, 589 F.3d 75 (2d Cir. 2009).

Notably, "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. That is, the issue is not whether the state court committed error, or even clear error, but "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). That threshold is "substantially higher" than incorrectness. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). Specifically, where AEDPA applies, federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put differently, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" *Cullen*, 563 U.S. at 181 (citations omitted).

Finally, as noted, a federal court may grant habeas relief under AEDPA if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's factual determinations, however, are "'presumed to be correct'" and may only be rebutted "'by clear and convincing evidence.'" *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (quoting

28 U.S.C. § 2254(e)(1)); *accord Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010).  This

requires "substantial deference" to the state court's determinations.  *Brumfield v. Cain*, 135 S. Ct.

2269, 2277 (2015).  "If [r]easonable minds reviewing the record might disagree about the finding

in question, on habeas review that does not suffice to supersede the trial court's . . .

determination."  *Id.* (alternations in original) (internal quotation marks and citations omitted).

Nor may the federal court characterize the state's decisions as unreasonable "merely because [it]

would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558, U.S. 290,

301 (2010).  That said, "'[e]ven in the context of federal habeas, deference does not imply

abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'"

*Brumfield*, 135 S. Ct. at 2277 (alteration in original) (quoting *Miller-El v. Cockrell,* 537 U.S.

322, 340 (2003)).

**B.  The *Strickland* Standard**

As noted, Cruz seeks habeas relief on the ground of ineffective assistance of counsel.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective

assistance of counsel must establish, first, that counsel's representation "fell below an objective

standard of reasonableness," *id.* at 687-88, and, second, that counsel's performance resulted in

prejudice, *see id.* at 687.  To meet the first prong of that demanding test, the defendant must

show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment."  *Id.*  In reviewing counsel's performance, a

court must be "highly deferential" and strive "to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time."  *Id.* at 689.  More specifically, a court "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Indeed, to the extent that counsel's challenged conduct is attributable to trial strategy, it is especially hard for a defendant to prevail. As the *Strickland* Court emphasized,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation . . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . . Decisions by criminal defense counsel are often choices among bad alternatives." *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010).

Significantly, where the Section 2254(d) standard of review applies to a claim of ineffective assistance, a federal court's review is "doubly deferential" and habeas relief is especially hard to obtain. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (internal quotation marks omitted). As the Supreme Court has explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (citations omitted); *see also, e.g., Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether [that determination] was

unreasonable — a substantially higher threshold." (internal quotation marks omitted)).  Put another way, because "[t]he *Strickland* standard . . . requires a substantial element of judgment on the part of the state court," state courts are granted "even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

### A.  The Standard of Review

Perhaps recognizing the difficulty of overcoming the twin burdens of Section 2254(d) and *Strickland*, Cruz argues as a threshold matter that the deferential standard set forth in Section 2254(d) does not apply here because the state court did not adjudicate his ineffective assistance claims "on the merits."  (Mem. Law Supp. Pet. Writ Habeas Corpus (Docket No. 8) ("Pet'r's Mem.") 53-54).  That argument borders on frivolous, however, as Justice Berkman explicitly stated that the evidence before her "fail[ed] to establish ineffectiveness under either the federal or state standards."  (State Decision at 8).  Further, her ten-page opinion denying Cruz's motion to vacate makes plain that she denied his claims on the merits based on her detailed review of the record, including both the trial record and the hearing she held in connection with his motion. Cruz's argument to the contrary rests exclusively on the final substantive sentence of Justice Berkman's opinion, in which she stated that, "[a]bsent evidence" that Cruz chose his all-or-nothing strategy "because he was misadvised by counsel, it is inappropriate for this court to determine the issues presented by this petition, as they are matters of record.  C.P.L. § 440.10(2)(b)."  (*Id.* at 10).[1]  That sentence, however, cannot be read in isolation.  In context, it

---

[1]      CPL Section 440.10(2)(b) provides that a court "must deny a motion to vacate a judgement when . . . [t]he judgment is, at the time of the motion, appealable or pending on

is plain that Justice Berkman was merely emphasizing that Cruz's approach to the hearing left her with "little if anything besides what appears in the record of the trial" and that the trial record alone was sufficient to deny Cruz's claims on the merits. (*Id.*). The sentence is certainly not enough to overcome the presumption "that the state court adjudicated the claim on the merits." *Harrington*, 562 U.S. at 99.

In the alternative, citing the Fourth Circuit's decision in *Winston v. Kelly*, 592 F.3d 535, 555-56 (4th Cir. 2010), Cruz argues that Justice Berkman's decision should not be deemed an adjudication on the merits because she denied his request to call Perez-Olivo at the hearing and limited the scope of Buckley's testimony at the hearing to whether Cruz had been misadvised in pursing his all-or-nothing defense, thereby rendering judgment on a "materially incomplete record." (*See* Reply Mem. (Docket No. 23) ("Pet'r's Reply") 9-11). But there is good reason to question the soundness of the Fourth Circuit's decision in *Winston*, which has been rejected by both the First and Sixth Circuits. *See Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013); *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011). As those Courts have explained, the Fourth Circuit's holding is in considerable tension, if not conflict, with the Supreme Court's decisions in *Harrington* and *Cullen*, which provide that federal courts are to presume that state court decisions are adjudicated on the merits absent evidence to the contrary, *see Harrington*, 562 U.S. at 99-100, and that federal habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen*, 563 U.S. at 180. *See Ballinger*, 709 F.3d at 562 ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of

---

appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

[*Cullen*] and [*Harrington*] precludes it."); *Atkins*, 642 F.3d at 49 (rejecting the petitioner's claim that the state court's decision was not on the merits because he had not received a "full and fair evidentiary hearing" and noting that a contrary interpretation would "eviscerate" the holding in *Cullen*).   In the present case, as discussed above, there is no reason to doubt that Justice Berkman intended to, and did, decide Cruz's claims on the merits.  *Harrington* therefore would appear to compel the conclusion that the state court's decision constituted an adjudication on the merits for the purposes of Section 2254(d).  And *Cullen*, in turn, would appear to limit this Court's review of the reasonableness of that decision to the record that was before the state court.

  In any event, even if the "materially incomplete" rule did apply in this Circuit, the Court would conclude that the state court did adjudicate Cruz's claims on the merits.  Unlike in *Winston* and every decision following *Winston*, the claims raised by Cruz here were explicitly addressed at trial *and* the state court held an evidentiary hearing to supplement the trial record. *Compare Garuti v. Roden*, 733 F.3d 18, 21-23 (1st Cir. 2013) (declining to apply *Winston* and finding a decision adjudicated on the merits when the record "provide[d] a constitutionally sufficient basis for the trial court to rule on the [underlying motion] without an evidentiary hearing and for the [reviewing state court] to affirm that ruling"), *with Winston*, 592 F.3d at 557 (noting that the petitioner's claims were not addressed in the trial record and that the state court did not hold an evidentiary hearing); *Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015) (same); *Lopez v. Miller*, 906 F. Supp. 2d 42, 58 n.9 (E.D.N.Y. 2012) (same).  Put simply, the record here was not "materially incomplete"; it included not only the detailed record made at trial concerning Cruz's own desire to pursue an all-or-nothing strategy, but also the sworn affidavit submitted by Perez-Olivo in conjunction with the motion to vacate and Buckley's testimony at the hearing held on that motion.  The Court cannot conclude that the record before

Justice Berkman was "materially incomplete" merely because she declined to grant a continuance to allow Cruz to call Perez-Olivo as a live witness — particularly since Cruz, to this day, fails to proffer how Perez-Olivo's live testimony would have aided him — or because she limited the scope of Buckley's testimony to the question of whether Cruz was misadvised by counsel in deciding to pursue his all-or-nothing strategy.[2]

## B.  The Merits

In short, the "doubly deferential" review mandated by Section 2254(d) and *Strickland* applies here.  *Woods*, 136 S. Ct. at 1151.  Applying that high degree of deference, there is no question that Cruz's petition must be denied.  Cruz's principal argument for ineffective assistance of counsel is that Perez-Olivo failed to request an instruction on manslaughter or to pursue an EED defense.  (*See* Pet'r's Mem. 40-46).  Those arguments, however, are foreclosed by the fact that Cruz himself insisted on his innocence — indeed, he testified to it under oath (even *after* seeing the strength of the prosecution's evidence) — and insisted on pursuing the all-or-nothing defense.  Notably, many courts have held that a lawyer's strategic decision to go for

---

[2]      For similar reasons, there is no merit to Cruz's contention that Justice Berkman's failure to decide his claims on a complete record was itself contrary to or involved an unreasonable application of Supreme Court precedent.  (*See* Pet'r's Mem. 54-57).  Cruz cites no decision of the Supreme Court requiring a state court to hold an evidentiary hearing to resolve claims of ineffective assistance of counsel, much less an evidentiary hearing of a petitioner's preferred scope.  In his reply memorandum of law, Cruz also contends his Fifth and Sixth Amendment rights entitled him to "call the relevant witnesses in the order he chose, and to make the decision to testify after hearing the witnesses" and that the state court violated those rights by requiring that Cruz testify to establish the necessity for calling Perez-Olivo.  (Pet'r's Reply 5 (citing *Brooks v. Tennessee*, 406 U.S. 605, 609-13 (1972)).  Separate and apart from the fact that a litigant may not raise new arguments in his reply, *see, e.g.*, *White v. First Am. Registry*, 592 F. Supp. 2d 681, 683 (S.D.N.Y. 2009), Cruz's argument is without merit.  *Brooks* does not establish that a defendant has the right to call witnesses in the order of his choice in the context of a post-conviction evidentiary hearing.  Cruz cites no authority, let alone Supreme Court authority, for the proposition that Justice Berkman was required to adjourn the hearing to allow Cruz to call Perez-Olivo as a live witness when he had submitted an affidavit and Cruz had submitted no evidence, or even a proffer, of how Perez-Olivo's testimony would help him.

broke, and not to request a lesser-included offense instruction or to pursue certain defenses that could dilute that strategy, "cannot provide a basis for claiming ineffective assistance of counsel." *Ramdeo v. Phillips*, 04-CV-1157 (SLT) (RLM), 2007 WL 1989469, at *34 (E.D.N.Y. July 9, 2007); *accord, e.g.*, *Miller v. Nooth*, 403 F. App'x 291, 292 (9th Cir. 2010) (holding that the failure to request a jury instruction on a lesser-included offense did not amount to deficient performance because counsel averred that, after consultation with client, "they jointly made a strategic decision to pursue an 'all-or-nothing' approach to obtain an outright acquittal"); *Kubat v. Thieret*, 867 F.2d 351, 364-65 (7th Cir. 1989) (concluding that counsel's decision not to request a lesser-included offense instruction in a kidnapping case was reasonable in light of the defendant's alibi defense); *Illescas v. Lee*, No. 11-CV-5835 (ARR), 2013 WL 1247513, at *10 (E.D.N.Y. Mar. 26, 2013) (holding that it was "reasonable" for counsel "to pursue full acquittal based on reasonable doubt rather than seek a conviction on a lesser included offense"); *Clarke v. Yellech*, No. 09-CV-8218 (WHP) (GWG), 2010 WL 2772343, at *7 (S.D.N.Y. July 9, 2010) (holding that counsel was not ineffective in failing to request a manslaughter charge where the defendant testified that he had committed the crime in self-defense), *report and recommendation adopted by* 09-CV-8218 (WHP) (GWG), 2010 WL 3155030 (S.D.N.Y. Aug. 9, 2010); *Black v. Goord*, 419 F. Supp. 2d 365, 381-82 (W.D.N.Y. 2006) (holding that, where counsel presented defense of misidentification, *i.e.* "that someone else committed the murder," failure to request lesser included offense charge was not unreasonable); *see also Rios v. United States*, No. 91-CV-4384 (CPS), 1992 WL 328931, at *6 (E.D.N.Y. Oct. 13, 1992) (observing that a defendant's choice to "pursue[ ] an exculpatory defense . . . practically precludes a request for an instruction on a lesser included offense" (citations omitted)); *Colon v. Smith*, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989) (finding that "[a] failure to request charges on all possible lesser included

offenses may be proper trial strategy"); *Cassie v. Graham*, No. 06-CV-5536 (PKC)(AJP), 2007 WL 506754, at *25 (S.D.N.Y. Jan. 31, 2007) (concluding that counsel was not ineffective for failing to request a lesser-included manslaughter charge because defense strategy of denying guilt is a "strategy that practically precludes a request for an instruction on a lesser included offense" (internal quotation marks omitted)), *report and recommendation adopted by* 06-CV-5536 (PKC) (AJP), 2009 WL 362134; *Smith v. Walsh*, No. 02-CV-5755 (WHP) (JCF), 2003 WL 21649485, at *7 (S.D.N.Y. July 14, 2003) (finding that counsel was not ineffective for failing to request charge on lesser included offense because such a charge "would have undermined counsel's strategy of seeking an acquittal").

        These decisions compel the conclusion that Perez-Olivo's decision to go for broke — a decision that he described at the time as strategic (Trial Tr. at 757-60) and that Cruz himself ratified (*id.* at 760) — cannot form the basis for an ineffective-assistance claim, particularly on federal habeas.  It is true, as Cruz notes (*see* Pet'r's Mem. 26 n.11), that whether to request a lesser-included manslaughter charge is a question for counsel to decide under New York law. *See, e.g.*, *People v. Colville*, 20 N.Y.3d 20, 32 (2012).  (By contrast, whether to pursue an EED defense is a question for the defendant.  *See id.* at 31-32.)  It is also true that, as a technical legal matter, a criminal defendant *can* simultaneously pursue an EED defense or argue manslaughter yet maintain his factual innocence (contrary to Buckley's testimony at the hearing).  *See, e.g.*, *People v. White*, 79 N.Y.2d 900, 903 (1992).  But the record makes plain that Perez-Olivo adopted his strategy only "after consulting with and weighing the accused's views along with other relevant considerations."  *Colville*, 20 N.Y.3d at 32.  Further, had Perez-Olivo pursued the argument that Cruz might have been guilty only of manslaughter or the claim that he might have committed the killing, but under EED, he may well "have 'severely undermine[d] his basic

argument that petitioner should not be found guilty of any crime.'" *Samuels v. Bennett*, No. 03-CV-2340 (BSJ) (FM), 2009 WL 2516850, at *24 (S.D.N.Y. Aug. 17, 2009) (quoting *Domingo v. Greiner*, No. 99-CV-1906 (JSM), 2002 WL 362761, at *2 (S.D.N.Y. Mar. 5, 2002)).  At a minimum, the Court cannot say that Perez-Olivo's decisions — after consultation with, indeed at the behest of, Cruz himself — were unreasonable.  And the Court certainly cannot say that Justice Berkman's rejection of Cruz's claims on the merits in light of counsel's stated strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

To be sure, Perez-Olivo's performance left much to be desired.  For example, there is some indication that he failed to review the prosecution's evidence — in particular, the videotapes proving that Cruz was on the scene at or about the time of the murder — until a few days before trial.  (*See* Pet'r's Mem. 6; Buckley Hr'g Tr. 25-27).  But the record indicates that, even when confronted with that evidence, Cruz insisted "that he did not do the shooting, and he absolutely would not take a plea."  (Buckley Hr'g Tr. 60).  (And, again, Cruz testified to that effect under oath *after* the videotapes were presented at trial.)  Perez-Olivo also failed to investigate whether the time stamps on the surveillance videos and the "Sprint" logs were synchronized — allowing the prosecution to rebut one of his principal arguments for reasonable doubt.  (Trial Tr. at 703-04).  But as Buckley testified at the hearing, "[t]hat was something [counsel] didn't want to know" — presumably because it might have definitively undermined one of Cruz's principal arguments for reasonable doubt.  (Buckley Hr'g Tr. 60).  In other words, counsel made a strategic determination that it was better to rely on the discrepancy in the timestamps to cast doubt on the prosecution's theory of the murder than to investigate further with the risk that it would rule out the argument altogether.  The Court cannot say that that

determination was unreasonable given Cruz's insistence on going for broke and counsel's limited options at the time. *Cf. United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989) ("The reasonableness of counsel's actions may be affected by the defendant's actions and choices, and counsel's failure to pursue certain investigations cannot later be challenged as unreasonable when the defendant has given counsel reason to believe that a line of investigation should not be pursued."). In the final analysis, with the benefit of 20/20 hindsight, it is plain that Cruz's and Perez-Olivo's all-or-nothing strategy may not have been the wisest one. But *Strickland* requires that the Court "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. And thus, "whether the defendant is ultimately convicted of the greater offense is irrelevant to the question of whether counsel acted ineffectively in choosing to forgo a lesser included offense instruction." *Clarke*, 2010 WL 2772343, at *7; *see generally Domingo v. Greiner*, No. 99-CV-1906 (JSM), 2002 WL 362761, at *2 (S.D.N.Y. Mar. 5, 2002) ("While with hindsight, counsel's decision not to seek a lesser included offense charge did not prove successful, his decision not to give the jury an option that could result in a compromise verdict was not unreasonable.").

Cruz's other arguments for habeas relief are not necessarily foreclosed by the fact that Perez-Olivo pursued an all-or-nothing strategy (and did so at Cruz's behest), but they are also without merit. First, he argues that Perez-Olivo was ineffective because he failed to seek a mistrial based on Juror Four's letter criticizing the defense summation and counsel's competence. (Pet'r's Mem. 47-50). Cruz, however, affirmed on the record at trial that it was his choice to proceed to verdict rather than to seek a mistrial. (*See* Trial Tr. 766-67). In light of that, Justice Berkman reasonably concluded that Cruz could show deficient performance only if he could prove that he made his decision based on the misadvice of defense counsel. (*See* State

Decision at 2-3).  Justice Berkman also reasonably concluded that Cruz failed to carry that

burden.  Indeed, at the evidentiary hearing, Buckley testified that, after receiving Juror Four's

note, he personally advised Cruz to seek a mistrial.  (Buckley Hr'g Tr. 54).  Further, according to

Buckley, Perez-Olivo "presented the options" to Cruz and told him that "you never know what a

jury's going to do," but did not advise him one way or the other.  (*Id.* at 56).  Buckley testified

that, throughout this discussion, Cruz "was very strongly in favor of continuing the trial."  (*Id.* at

55).  In light of that record, which was unrefuted by Cruz, Justice Berkman reasonably concluded

that Perez-Olivo merely acquiesced in, or acceded to, Cruz's own decision not to seek a mistrial

and that Cruz's decision was an informed one.  (*See* State Decision at 2).

   Finally, Cruz contends that Perez-Olivo was ineffective in various ways throughout the

litigation — for example, by failing to seek suppression of Cruz's statement to the police, by

failing to meaningfully cross-examine many of the witnesses at trial, by failing to raise various

objections, and by failing to deliver an effective summation.  (*See* Pet'r's Mem. 33-36, 46).

Again, although Perez-Olivo's performance may have left something to be desired in these

respects, Cruz falls far short of carrying his burden to obtain habeas relief.  With respect to

Cruz's first contention, there is no evidence that Cruz would have had a meritorious suppression

motion to make.  At the post-conviction evidentiary hearing, Cruz called Jesse Cohen, a lawyer

who had been retained by Cruz's family to go to the precinct when Cruz was being questioned.

As Justice Berkman found, however, there was no evidence that Cruz "was not informed of

Cohen's arrival" and no evidence that Cruz "then accepted Cohen, whom he had never met and

had not himself retained, as his counsel."  (State Decision at 4).  Nor has Cruz established how

the admission of his pretrial statements to the police prejudiced him given that he testified at trial

(and thus presumably would have been impeached with his pretrial statements in any event).  As

for Cruz's other complaints, even taken together, they do not rise to the level that would warrant relief in this forum.  Cruz fails to identify any witness that Perez-Olivo could have or should have cross-examined differently in light of his all-or-nothing strategy.  Similarly, he does not point to any meritorious objection that Perez-Olivo could have or should have made.  Justice Berkman rejected all of these arguments on the ground that all of defense counsel's strategic decisions derived from Cruz's insistence on an all-or-nothing defense.  (State Decision at 3).  That conclusion was not unreasonable.  Put bluntly, Cruz cannot now claim that his counsel was ineffective for mounting a hopeless defense that he chose for himself.

## CONCLUSION

In short, given the double deference that applies where, as here, a criminal defendant presses a claim of ineffective assistance on federal habeas review, the Court is compelled to deny Cruz's petition in its entirety.  In light of the substantial evidence of Cruz's guilt, there is little question that he would have been better off adopting a different strategy than the all-or-nothing one that he pursued at his trial.  Further, it goes without saying that Perez-Olivo's conduct at trial and in the aftermath of the trial — when he was disbarred and ultimately convicted of murder himself — leaves him vulnerable to criticism.  But, as Justice Berkman noted, "the tragic and remarkable facts of Perez-Olivo's downfall do not themselves overcome the presumption of effectiveness" that applies under *Strickland*.  (State Decision at 7).  Nor do they overcome the presumptions that apply on federal habeas review.  In the final analysis, the state-court record developed at trial and in the post-conviction evidentiary hearing provides no basis to question Justice Berkman's conclusion that Perez-Olivo adopted the ill-advised all-or-nothing strategy not only with Cruz's informed consent, but indeed also at his direction.  Given that, the Court cannot

and will not indulge at this stage Cruz's belated expressions of "'buyer's remorse'" or his attempts to engage in "'Monday morning quarterbacking.'" *Mui*, 614 F.3d at 57.

For the reasons stated above, Cruz's petition is DENIED. Further, as Cruz has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). But the Court does find that any appeal from this Opinion and Order would be taken in good faith, as the issues Cruz raises are certainly not frivolous. Accordingly, *in forma pauperis* status is granted. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 11, 2016
       New York, New York

_____
JESSE M. FURMAN
United States District Judge